UNSEALED
PER ARREST

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

United States District Court
Southern District of Texas
FILED

FEB 0 7 2012

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | Criminal No. H 12 -64 |
| | § | |
| v. | § | |
| | § | UNDER SEAL |
| MOHAMMAD KHAN, | § | |
| | § | |
| Defendant. | § | |

## INDICTMENT

The Grand Jury charges:

### General Allegations

At all times material to this Indictment, unless otherwise specified:

1.      The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Medicare was a "healthcare benefit program" as defined by Title 18, United States Code, Section 24(b).

2.      Medicare was subdivided into multiple Parts.  Medicare Part B covered partial hospitalization programs ("PHPs") connected with the treatment of mental illness.  The treatment program of PHPs closely resembled that of a highly structured, short-term hospital inpatient program, but it was a distinct and organized intensive treatment program that offered less than 24-hour daily care.

3.      Patients eligible for Medicare coverage of a PHP comprised two groups:  (1) those patients who were discharged from an inpatient hospital treatment program, and the PHP is

in lieu of continued inpatient treatment and (2) those patients who, in the absence of partial hospitalization, would require inpatient hospitalization.

4.      Medicare guidelines required that patients admitted to a PHP required PHP services at levels of intensity and frequency comparable to patients in an inpatient setting for similar psychiatric illnesses.

5.      Under the PHP benefit, Medicare covered the following services:  (1) individual and group psychotherapy with physicians, psychologists or other mental health professionals; (2) occupational therapy requiring the skills of a qualified occupational therapist; (3) services of social workers, trained psychiatric nurses and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that could not be self-administered; (5) individualized activity therapies that were not primarily recreational or diversionary; (6) family counseling services for which the primary purpose is the treatment of the patient's condition; (7) patient education programs where the educational activities were closely related to the care and treatment of the patient; and (8) diagnostic services.

6.      Medicare guidelines specifically excluded meals and transportation from coverage under the PHP benefit.

7.      Medicare did not cover programs providing primarily social, recreational or diversionary activities.  Medicare excluded from coverage programs attempting to maintain psychiatric wellness and treatment of chronic conditions without acute exacerbation. Psychosocial programs that provided only a structured environment, socialization or vocational rehabilitation were not covered by Medicare.

8.      Medicare required that the PHP was provided at a facility that was hospital based or hospital affiliated or at a community mental health center.

9.    Individuals who qualified for Medicare benefits were commonly referred to as Medicare "beneficiaries." Each beneficiary was given a Medicare identification number.

10.    Hospitals, physicians and other healthcare providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare related laws and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A healthcare provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

11.    Medicare paid hospitals and other healthcare providers for services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

12.    CMS contracted with Medicare Administrative Contractors ("MACs") to process claims for payment. The MAC that processed and paid Medicare Part B claims for PHP services in Texas was TrailBlazer Health Enterprises, LLC ("TrailBlazer").

13.    To bill Medicare for services rendered, a provider submitted a claim form (Form 1500) to TrailBlazer. When a Form 1500 was submitted, usually in electronic form, the provider certified that: (1) the contents of the form were true, correct and complete; (2) the form was prepared in compliance with the laws and regulations governing Medicare; and (3) the contents of the claim were medically necessary.

14.    A Medicare claim for PHP reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the item or service provided to the beneficiary, the date the item or service was provided, the cost of the item or

service and the name and unique physician identification number of the physician who prescribed or ordered the item or service.

15.     Defendant **MOHAMMAD KHAN**, a resident of Harris County, Texas, was an Assistant Administrator at a hospital ("the Hospital") who managed and controlled the day-to-day operations of the Hospital's PHPs.

16.     The Hospital was a Texas non-profit entity doing business in Houston, Texas. The Hospital billed Medicare for PHP services that were not medically necessary and, in some cases, not provided.

**COUNT 1**
**Conspiracy to Commit Health Care Fraud**
**(18 U.S.C. § 1349)**

17.     Paragraphs 1 through 16 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

18.     From in or around January 2008, through the present, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

**MOHAMMAD KHAN,**

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items and services.

4

## Manner and Means of the Conspiracy

The manner and means by which the defendant sought to accomplish the purpose and object of the conspiracy included, among other things:

19.    The Hospital would maintain a valid Medicare provider number in order for it to submit claims to Medicare for PHP services.

20.    Defendant **MOHAMMAD KHAN** would manage and control the day-to-day operations of the Hospital's PHPs.

21.    Defendant **MOHAMMAD KHAN** would pay and cause the payment of kickbacks to recruiters and owners of assisted living facilities ("ALFs") and group care homes in exchange for recruiters and owners of ALFs and group care homes sending Medicare beneficiaries to the Hospital's PHPs.

22.    Defendant **MOHAMMAD KHAN** would pay and cause the payment of kickbacks, in the form of cigarettes, food and coupons redeemable for items available at the Hospital's "country stores," to Medicare beneficiaries in exchange for those beneficiaries attending the Hospital PHPs.

23.    Defendant **MOHAMMAD KHAN** and his co-conspirators would submit and cause to be submitted approximately $116 million in claims to Medicare for PHP services purportedly provided by the Hospital, when in fact, such PHP services were not medically necessary and, in some cases, never provided.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Defraud the United States and to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

24.     Paragraphs 1 through 16 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

25.     From in or around January 2008, through the present, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,

### MOHAMMAD KHAN,

did knowingly and willfully combine, conspire, confederate and agree with others known and unknown to the grand jury, to commit certain offenses against the United States, that is,

      a.     to defraud the United States by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

      b.     to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that

is, Medicare; and

c.      to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

## Purpose of The Conspiracy

26.     It was the purpose of the conspiracy for defendant **MOHAMMAD KHAN** and his co-conspirators to unlawfully enrich themselves by paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries for whom the Hospital would submit claims to Medicare.

## Manner and Means of The Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

27.     Paragraphs 19 through 23 contained in Count One of this Indictment are realleged and incorporated by reference as if fully set forth herein.

**Overt Acts**

28.      In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

a.      In or about May 2011, defendant **MOHAMMAD KHAN** caused the payment of approximately $5,000 to Recruiter #1 in exchange for Recruiter #1 referring Medicare beneficiaries to the Hospital for PHP services.

b.      In or about May 2011, defendant **MOHAMMAD KHAN** caused the payment of approximately $3,900 to Group Home #1 in exchange for Group Home #1 sending Medicare beneficiaries to the Hospital for PHP services.

c.      In or about June 2011, defendant **MOHAMMAD KHAN** caused the payment of approximately $5,000 to Recruiter #1 in exchange for Recruiter #1 referring Medicare beneficiaries to the Hospital for PHP services.

d.      In or about August 2011, defendant **MOHAMMAD KHAN** agreed to pay Recruiter #2 more than $300 for each Medicare beneficiary Recruiter #2 referred to the Hospital for PHP services.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 3-7**
**(42 U.S.C. § 1320a-7b(b)(2), 18 U.S.C. § 2)**

29.      Paragraphs 1 through 16, 19 through 23, and 26 through 28 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

30.      On or about the dates enumerated below, in Harris County, in the Southern District of Texas, and elsewhere, the defendant **MOHAMMAD KHAN** aiding and abetting others known and unknown to the Grand Jury, as set forth below, did knowingly and willfully

offer and pay remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare:

| Count | On or about Date | Approximate Amount of Kickback |
|:-----:|:----------------:|:------------------------------:|
| 3 | May 2011 | $5,000 |
| 4 | May 2011 | $3,900 |
| 5 | June 2011 | $5,000 |
| 6 | August 2011 | More than $300 per beneficiary referred |
| 7 | June 14, 2011 | $5,000 |

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. §§ 982(a)(7), 981(a)(1)(C), and 28 U.S.C. § 2461)

31.    Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to the defendant, **MOHAMMAD KHAN**, that, in the event of conviction for any of the violations charged in Counts One through Seven of the Indictment, the United States intends to forfeit all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of any such offense. The property subject to forfeiture includes the amount of money obtained from the violations charged in

Counts One through Seven.  Defendant is notified that a money judgment may be imposed equal to the total value of the property subject to forfeiture.

32.     In the event that the property subject to forfeiture as a result of any act or omission of a defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461.

A TRUE BILL

ORIGINAL SIGNATURE ON FILE

_____

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

_____

LAURA M.K. CORDOVA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE