United States District Court
Southern District of Texas
**ENTERED**
June 07, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. H-12-0064-01 |
| § | |
| MOHAMMAD KHAN § | |

**MEMORANDUM OPINION AND ORDER**

The defendant, Mohammad Khan (Register No. 07174-379), is currently serving a term of 480 months' confinement in the United States Bureau of Prisons as the result of a sentence imposed by this court in 2015 following his guilty plea to charges of health care fraud. See Judgment in a Criminal Case, Docket Entry No. 48, p. 3. The Fifth Circuit affirmed Khan's conviction in an unpublished opinion. See United States v. Khan, No. 15-20293 (5th Cir. March 9, 2016) (per curiam) (Docket Entry No. 74). On March 7, 2017, this court dismissed Khan's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody. See Memorandum Opinion and Order, Docket Entry No. 89, p. 10. Khan's appeal from that decision was dismissed for lack of jurisdiction as untimely filed. See United States v. Khan, No. 18-20146 (5th Cir. May 30, 2018), Docket Entry No. 106, p. 2.

Now pending before the court is Khan's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Defendant's Motion") (Docket Entry No. 116), which seeks compassionate release

from imprisonment, and the United States' Response in Opposition to Defendant Mohammad Khan's Motion for a Reduction in Sentence ("Government's Response") (Docket Entry No. 119). After Khan submitted a Supplement for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Defendant's First Supplement") (Docket Entry No. 120), the government filed the United States' Response in Opposition to Defendant Mohammad Khan's Motion for a Reduction in Sentence and Supplement (Docket Entry No. 122), which includes medical records (Docket Entry Nos. 122-1, 122-2). At the court's request, Khan has also filed a second Supplement to Compassionate Release Motion ("Defendant's Second Supplement") (Docket Entry No. 124), which includes additional medical records (Docket Entry No. 125-1). The government has replied with the United States' Response in Opposition to Defendant Mohammad Khan's Second Supplemental Motion for a Reduction in Sentence ("Government's Second Supplemental Response") (Docket Entry No. 126), which also includes medical records (Docket Entry No. 126-1). After carefully considering the entire record and the applicable law, the court will deny Defendant's Motion for the reasons explained below.

I. **Background**

In 2012 Khan was charged in a multi-count indictment with the following offenses: conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349 (Count 1); conspiracy to defraud the United States and pay health care kickbacks in

violation of 18 U.S.C. § 371 (Count 2); and offering or paying health care kickbacks, aiding and abetting, in violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2 (Counts 3-7).[1] Khan entered a guilty plea to all seven counts, which were based on evidence showing that he fraudulently billed Medicare for services associated with partial-hospitalization programs ("PHPs") while acting in his capacity as an assistant administrator at Riverside General Hospital ("Riverside").[2] The fraudulent scheme perpetrated by Khan and his co-conspirators resulted in a substantial loss of approximately $116 million from the Medicare program.[3]

According to the Presentence Investigation Report ("PSR") prepared by the probation officer, Khan managed the day-to-day operation of several PHPs affiliated with Riverside.[4] Khan and his cohorts paid kickbacks to the owners and operators of group homes, to individuals who recruited or controlled patients, and sometimes to patients themselves, to refer Medicare beneficiaries to Riverside-affiliated PHPs without regard for whether the treatment was necessary.[5] The probation officer reviewed extensive evidence

---

[1] Indictment, Docket Entry No. 1, pp. 4-9. For purposes of identification all page numbers reference the pagination imprinted on each docket entry by the court's electronic case filing ("ECF") system.

[2] Plea Agreement, Docket Entry No. 16, pp. 1-2.

[3] Id. at 2, ¶ 2.

[4] PSR, Docket Entry No. 41, p. 8 ¶ 23.

[5] Id. at 11, ¶ 40.

from the investigation and determined that Khan, as an "organizer/leader" of the conspiracy who "[knew] or should have known" that the offense involved a large number of vulnerable victims, "oversaw the systematic manipulation of thousands of Medicare beneficiaries who were fraudulently committed to inpatient treatment, were placed in PHP treatment programs that were not medically necessary, for periods extending several years in some cases, and who were not provided proper and timely medical care while being repetitively recycled through the PHPs to generate revenue for Riverside."[6]

Khan's punishment range under the United States Sentencing Guidelines was enhanced significantly because he was personally accountable for actual loss of over $31 million from the Medicare program.[7] During the sentencing hearing on May 21, 2015, the government pointed to the far-reaching scale of the fraud perpetrated by Khan, who was essentially second-in-command at Riverside, and noted further that the victims of his scheme were "[n]ot just Medicare beneficiaries, but Medicare beneficiaries with mental illness or history of mental illness, or substance [abuse] issues, as well as individuals with dementia and other mental disabilities."[8] Although Khan expressed remorse for his involvement, the court sentenced him to serve a total of 480 months

---

[6]Id. at 36, ¶¶ 85, 86.

[7]Id. at 35-36, 37-38, ¶¶ 82-83, 94.

[8]Sentencing Transcript, Docket Entry No. 66, p. 7, lines 18-21.

or 40 years' imprisonment and to make restitution to the Medicare program in the amount of $31,324,243.00, jointly and severally with Riverside's president, Earnest Gibson III, and others who orchestrated the fraudulent scheme.[9]

Khan is currently serving his 40-year sentence at a medium custody Federal Correctional Institution in Butner, North Carolina ("FCI-Butner Medium II").[10] He is 72 years of age and he is not projected to be released until 2046.[11]

Khan has been in federal custody since his arrest on February 8, 2012,[12] and has now served just over 10 years of his sentence. At the time his sentence was imposed in 2015, Khan disclosed that he had hypertension that required medication.[13] He provides medical records showing that he has been treated for diabetes, arthritis, and acid reflux while incarcerated.[14] Citing his advanced age and vulnerability to serious illness or death from COVID-19, as well as his exemplary conduct while in custody, Khan

---

[9] See id. at 14-15, lines 7, 20-25; see also Judgment in a Criminal Case, Docket Entry No. 48, pp. 3, 6-7.

[10] See United States Bureau of Prisons website, available at: https://www.bop.gov/inmateloc/ (last visited May 31, 2022).

[11] See id.

[12] See PSR, Docket Entry No. 41, p. 2.

[13] See id. at 40, ¶ 117.

[14] See Defendant's Motion, Docket Entry No. 116, p. 10; Exhibit B, Bureau of Prisons Health Services Health Problems, Docket Entry No. 117-1, pp. 2-4 (listing an assortment of health issues).

seeks compassionate release from prison and a reduction in sentence to time served under 18 U.S.C. § 3582(c)(1)(A).[15]

After Khan filed his initial motion he disclosed in a supplemental pleading that he was hospitalized for complications associated with COVID-19, which required placement on a ventilator and subsequent treatment for loss of "motor skills and physical functions."[16] Khan, who was admitted to a local hospital on December 17, 2020, before being transferred to a regional hospital on December 31, 2020, has provided additional information showing that he suffered from acute anemia, acute respiratory failure with hypoxemia, hypothermia, hyponatremia, leukocytosis, a bilateral pneumothorax, sepsis, and hospital-acquired pneumonia.[17] He remained hospitalized for these complications until May 25, 2021.[18] Khan acknowledges that his medical records show that he has not suffered any additional complications from COVID-19 since his release from the hospital.[19] Nevertheless, he argues that compassionate release is warranted because further medical care "might" be necessary and

---

[15]Defendant's Motion, Docket Entry No. 116, pp. 9-16.

[16]Defendant's First Supplement, Docket Entry No. 120, p. 1.

[17]Defendant's Second Supplement, Docket Entry No. 124, pp. 2-4 (describing each of these conditions in a series of footnotes).

[18]Government's Second Supplemental Response, Docket Entry No. 126, p. 5.

[19]Defendant's Second Supplement, Docket Entry No. 124, p. 6.

that variants of the virus causing COVID-19 continue to pose a threat while he remains imprisoned.[20]

The government opposes Khan's request for a reduction in sentence, arguing that factors outlined in 18 U.S.C. § 3553(a) do not support his early release.[21] The government states that Khan received excellent medical care after contracting COVID-19 and that the Bureau of Prisons has taken steps to protect inmates from infection by vaccinating prisoners and staff at his assigned facility.[22] These arguments are discussed below under the statutory framework that governs a defendant's motion to modify a federal sentence of imprisonment.

## II. Analysis

Subject to limited exceptions a district court generally may not reduce or modify a defendant's sentence of imprisonment after it has been imposed. See 18 U.S.C. § 3582(c); Dillon v. United States, 130 S. Ct. 2683, 2690 (2010) (explaining that a judgment of conviction that includes a sentence of imprisonment is a "final judgment" that "may not be modified by a district court except in limited circumstances"). The defendant in this case

---

[20]Id.

[21]Government's Response, Docket Entry No. 119, p. 1; Government's Second Supplemental Response, Docket Entry No. 126, p. 1.

[22]Government's Second Supplemental Response, Docket Entry No. 126, pp. 5-6.

invokes an exception that allows a district court to modify a term of imprisonment for compassionate reasons under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239-41 (Dec. 21, 2018), upon motion of the Director of the Bureau of Prisons "or upon motion of the defendant" if the court finds that "extraordinary and compelling reasons warrant a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i).[23]

A motion for a sentence reduction under § 3582(c)(1)(A) filed on behalf of a defendant by the Bureau of Prisons must comply with a policy statement articulated by the United States Sentencing Commission. See U.S.S.G. § 1B1.13 (U.S. Sentencing Comm'n 2021) (articulating the policy statement on reductions in a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)). The policy statement found in U.S.S.G. § 1B1.13, which has not been updated since the First Step Act went into effect in 2018, authorizes early release only if the court finds that (A) "extraordinary and compelling reasons" exist or (B) that the defendant is at least 70 years old and has served at least 30 years in prison, and the court further finds that the defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1)-(2).

---

[23]The exhaustion requirement for a compassionate-release motion under 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied in this case. See Government's Response, Docket Entry No. 119, p. 2; see also Exhibit A, Memorandum for Khan, Muhammad, Reg. No. 07174-379, dated July 14, 2020, Docket Entry No. 119-1, pp. 1-2.

"There is little developed guidance on what constitutes extraordinary and compelling reasons for a sentence reduction because neither § 3582 nor the [Sentencing] Guidelines fully define or limit those reasons." United States v. Rodriguez, 27 F.4th 1097, 1099 (5th Cir. 2022) (citation omitted). Although the Fifth Circuit has held that the policy statement in U.S.S.G. § 1B1.13 is not binding and does not control the outcome of a motion for compassionate release filed by a defendant, United States v. Shkambi, 993 F.3d 388, 392-93 (5th Cir. 2021), it may be referred to when deciding such a motion solely for the purpose of informing the court's analysis "as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." United States v. Thompson, 984 F.3d 431, 433 (5th Cir.) (5th Cir.), cert. denied, 141 S. Ct. 2688 (2021) (citation omitted); United States v. Jackson, 27 F.4th 1088, 1090 (5th Cir. 2022) (citing Thompson, 984 F.3d at 433).

After making its own independent determination of whether extraordinary circumstances exist, see Rodriguez, 27 F.4th at 1100 (citations omitted), a district court must address a defendant's own motion under § 3582(c)(1)(A) by considering whether a sentence reduction is consistent with the sentencing factors set out in 18 U.S.C. § 3553(a). See Shkambi, 993 F.3d at 393 (explaining that a court considering "a prisoner's own motion" is bound "only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)"). Because decisions about whether to grant or deny a

-9-

motion for compassionate release are discretionary, "a thorough factual record" is required, and a district court "must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors[], for its decision." United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020) (footnote omitted). A defendant's motion for compassionate release may be denied if he fails to persuade the court that his early release would be consistent with the factors set out in § 3553(a). See Jackson, 27 F.4th at 1089.

The statute governing motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) does not define the circumstances that qualify as extraordinary and compelling, but commentary to the policy statement currently found in U.S.S.G. § 1B1.13(1) limits the circumstances based on the defendant's health to the following:

> (A)  Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or

>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n. 1(A). A defendant may also demonstrate extraordinary and compelling reasons for release based on his age if he is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id. at § 1B1.13, cmt. n. 1(B). Khan does not show that his circumstances are comparable to any of these non-binding criteria.

Although Khan was hospitalized for several months with complications from COVID-19, he concedes that he has not suffered any additional complications since his release from the hospital.[24] The medical records show that Khan has been seen by Bureau of Prisons health care providers on only two occasions in 2022, for potential sleep apnea and for issues associated with gastro-esophageal reflux disease.[25] Records of these encounters reflect that his other medical conditions, which include hypertension and

---

[24]Defendant's Second Supplement, Docket Entry No. 124, p. 6.

[25]Bureau of Prisons Health Services Clinical Encounter, Exhibit A to Government's Second Supplemental Response, Docket Entry No. 126-1, pp. 2-6.

type-2 diabetes, are well controlled with medication.[26] When considered in combination with the fact that Khan has only served 25% of his sentence, he has not established that there are extraordinary and compelling reasons to justify a reduction of his sentence. Courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." Thompson, 984 F.3d at 434-35.

Khan, who has only served 25% of his 40-year sentence, has not shown that his chronic ailments are uncontrolled at this time or that he is at heightened risk for serious illness or death due to COVID-19 or any of its variants. The government notes that as of April 28, 2022, there was only one inmate and no staff members who had tested positive for COVID-19 at FCI-Butner Medium II, which reportedly has the third highest number of inmates vaccinated of all BOP facilities.[27] To the extent that Defendant's Motion is based in part on fear of being reinfected with a variant of COVID-19, fear of COVID-19 does not automatically justify release for an otherwise healthy defendant who has well-controlled, chronic medical conditions and who has served less than half of his sentence. See Thompson, 984 F.3d at 435. The court concludes, therefore, that Khan has not demonstrated that extraordinary and compelling reasons justify an early release.

---

[26]See id.

[27]Government's Second Supplemental Response, Docket Entry No. 126, p. 6.

More importantly, Khan does not demonstrate that his early release is supported by the sentencing factors found in 18 U.S.C. § 3553(a), which requires a court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In doing so the court must consider

> (2) the need for the sentence imposed—
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Id. at § 3553(a)(2). The court is also required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" Id. at § 3553(a)(6).

Khan, who notes that he accepted responsibility by pleading guilty to his offenses, argues that the sentencing factors justify a reduction in sentence because he committed a non-violent offense and has been a model prisoner who poses no threat to the public.[28] Asserting further that he has made "significant post-sentencing

---

[28]Defendant's Motion, Docket Entry No. 116, pp. 14-15.

rehabilitation efforts," Khan asks for a reduction in sentence to time served.[29]

Evidence of post-sentencing rehabilitation may be "highly relevant" to several of the factors found in 18 U.S.C. § 3553(a). Pepper v. United States, 131 S. Ct. 1229, 1242 (2011). But Khan has not provided specific facts or evidence showing what, if any, rehabilitative programs he has completed while in prison. Therefore, he has not established that the sentence imposed no longer serves the need to afford adequate deterrence for his criminal conduct or to protect the public from further crimes by him. See 18 U.S.C. § 3553(a)(2)(B)-(C).

Although fraud is considered a non-violent offense, Khan was one of the leaders of a massive scheme resulting in a loss of approximately $116 million from a government health care program at the expense of thousands of vulnerable Medicare beneficiaries who were repetitively recycled through PHPs for Riverside's enrichment.[30] Because he has completed only 10 years of a 40-year term of imprisonment, a reduction in sentence to time served would be disproportionate to the amount of time remaining on that sentence. It also would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for an offense that inflicted medically unnecessary inpatient

---

[29]Id. at 15, 16.

[30]PSR, Docket Entry No. 41, p. 36 ¶¶ 85, 86.

treatment on vulnerable victims and resulted in substantial loss from a taxpayer-funded government health care program. See 18 U.S.C. § 3553(a)(2)(A).

Khan has not commented on the current conditions of his confinement or shown that the BOP is incapable of providing care for his ongoing medical needs, including any potential need for further care related to his recovery from COVID-19.[31] Khan fails to show that the sentence imposed will not afford him with the opportunity to receive necessary "medical care" or "other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(D).

The government argues that reducing Khan's sentence to time served would result in unwarranted disparities among codefendants who also received lengthy sentences for their leadership role in the fraudulent scheme and who have not been granted any reduction.[32] Khan's direct supervisor, Earnest Gibson III, was convicted in a separate case and sentenced to 540 months' imprisonment. See United States v. Gibson III, Crim. No. H-12-0600-01 (S.D. Tex.) (Docket Entry No. 508, p. 3).[33] Other members of the Riverside

---

[31]Defendant's Motion, Docket Entry No. 116, pp. 14-16; Defendant's Second Supplement, Docket Entry No. 124, p. 6.

[32]Government's Second Supplemental Response, Docket Entry No. 126, p. 7.

[33]The district court denied the motion for compassionate release filed by Earnest Gibson III, who at 76 years of age was
(continued...)

conspiracy also received lengthy prison sentences that have not been reduced. See United States v. Gibson IV, Crim. No. H-12-0600-02 (S.D. Tex.) (Docket Entry No. 875, p. 8) (denying the defendant's motion for compassionate release in part because reducing his 240-month custodial sentence to time served and imposing only three years of supervised release was disproportionate to the time left in his sentence); United States v. Iglehart, Crim. No. H-13-746-01 (S.D. Tex.) (Docket Entry No. 212, pp. 12-16; Docket Entry No. 223, p. 3) (finding that the defendant failed to establish extraordinary and compelling reasons for compassionate release or show that a reduction in her 144-month sentence was warranted under the factors found in § 3553(a)).

After considering 18 U.S.C. § 3582(c)(1)(A)(i) and all of the relevant sentencing factors, the court concludes that none of those factors weigh in favor of Khan's release to time served. Therefore, his motion for a reduction in sentence will be denied.

### III. Conclusion and Order

Accordingly, the court ORDERS the Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) filed by Mohammad Khan (Docket Entry No. 116) is DENIED.

---

[33](...continued)
suffering from severe kidney disease, diabetes, hypertension, congestive heart failure, anemia, gout, high cholesterol, and chronic ulcers, but recommended his temporary placement on home confinement for a period of two years under the CARES ACT. See United States v. Earnest Gibson, III, Crim. No. H-12-600-01 (S.D. Tex. July 2, 2020) (Docket Entry No. 896, pp. 4, 6-7).

The Clerk will provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 7th day of June, 2022.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE